Your Honor, this is a case on the Doctrine C-17-1034, arguing the marriage of Cherie Verhines, the petitioner-accountant, and Michael O'Keefe, the responsible athlete. Arguing on behalf of the petitioner-accountant, is Annette M. Bernholtz. Arguing on behalf of the responsible athlete, is Mr. George Doolittle. Both sides may proceed. Good morning, Justices. What brings this matter before you today is the issue regarding post-decree modification of child support. On behalf of Cherie Verhines, we maintain the trial court's analysis of Michael O'Keefe's income is substantially flawed. It's based on assumptions that do not comport with facts that were presented at the trial. For example, the trial court completely disregarded the $400,000 withdrawal from a retirement account that Mr. Hickey took in 2016. My opposing counsel has argued that that's not relevant because it was 2016 income and child support was set at the hearing in April 2017. But by April 2017, the trial court had no knowledge if Mr. Hickey continued to make withdrawals from his retirement accounts, if Mr. Hickey became re-employed, what Mr. Hickey's tax consequences were. The only thing that the trial court really had was the 2016 tax returns to look at and to acknowledge that there had been this withdrawal of $400,000. The trial court also makes the assumption that this was a one-time withdrawal. It was at that point, but as we say, after April 2017, we don't know if that's true or not true. Yeah, but that's not really relevant, what happened after that point in time. I know, but what is relevant, Justice, is that he did make that withdrawal in 2016 and the trial court completely disregarded it. Right, but that's what happened since then. I understand it. You're looking at a picture in time and that's what the court had to look at. But I think that the trial court also made the assumption that that withdrawal was not income for child support purposes. Was he taxed on that or no? He was not taxed on that. Minimal tax. No, I think it was in a category where he really did not get, he wasn't taxed on that. But as we know, per case law, whether it's taxed for IRS purposes or whatever it is, income is defined differently than the IRS defines income. That is one consideration, though. Absolutely. So the question, it really begs the question, did Mr. Hickey's income substantially change? Was there really a substantial change in circumstances? Granted, he had been downsized from half-heavy in December of 2014. He continued to receive income from them, deferred compensation, other. But when you look at his deferred compensation he receives, the pension he receives, the interest income he received, and also his withdrawals that he's taking out. You're talking about the IRA withdrawals. Correct. Is there really any substantial change in circumstances at all? Is IRA withdrawals income? Because you kind of have a split in the districts, don't you? Yeah, this district, in Lindman, the second district has found that it is. Now, granted, my opposing counsel is trying to argue that it's not an IRA, it's actually an annuity. And he equates annuity with a savings account. But there is no case law, there is nothing to substantiate that claim, because he's trying to rely on the grant being the savings. Withdrawals from savings accounts are assets that people already have and there's no earnings on that. But we don't know, A, if there is no case law on annuity that's been published at all. I mean, at most there was an unpublished opinion which gave no rendering whether it was income or not for child support purposes because there hadn't been enough examination of whether the employer provided that basis for the annuity, whether the actual employee provided it, and what were the savings and what were the earnings on that. So the first district didn't even render opinion regarding that. And as we stand here today, there is no opinion regarding that. But I think based on the Income Support Withholding Act, which includes annuity income, there's certainly a basis to look at this $400,000 as income, whether it's an annuity, whether it's an IRA, it's a retirement asset that he withdrew income from and granted from the facts in the case. You can see he spent some for taxes, he spent some to convert it for another real estate asset, and he took $140,000 to spend on his ordinary living expenses, which I don't know how any court can get around the fact that if you're taking money out to live on, that is not income for you for purposes to maintain your livelihood. Whose burden is it to show that it is income or is not income? I think that it's... Is it his burden to show that that is not income, I guess, should be my question. If he's going to maintain that it's an annuity, yes, because I think we have met our burden where we say he admits on trial that it's a retirement asset. We provide the Dillinman case to back up our claim that yes, indeed, it's income, and the trial court erred by not considering that. And if he wants to have an alternative theory, I think he has to have a case law or a statute to something to rely on to support that claim. How does Linton and Dick differ from Dillivo, that was also a Second Appellate District case? I'm trying to... Which is the day trader that took money out for his support. Do you remember that case? I don't remember off the top of my head. The court, we found in that case that it was not income. I don't... I am not familiar with that case off the top of my head, Justice, so I can't address that. I'm sorry. But just to explore that, so they're saying that the day trader's withdrawals were not income? Well, it was a one-time small withdrawal for a living expense, not living expense to go on vacations and buy certain things. Right. So that's how it was distinguished from the Linton case. Right. So that was similar to the... It was not recurring either. It was a one-time, as Linton was a one-time. Right. Right. I can't address it. I have to. I know that opposing counsel relied on Marsh, which dealt with stock, but that's a very different issue than looking at a retirement asset, which clearly is income under this district. I mean, so then, you know, just proceeding along, you know, I think the importance of the point I really kind of wanted to make was that while Mr. Hickey was receiving income of $871,000 in 2014 and $1.4 million in 2015, I want the justices to recognize that Ms. Verheyen's child support receipt was capped in those years. She received $3,000.23 per month in base child support, then she got a percentage of bonus, but those bonuses were capped. So it's not like she got these great windfalls in 2014 and 2015 when he received all this extraordinary money to go travel around the world and do whatever he wanted to do. And so part of the issue that this is so trying on her is that if this court doesn't impose a duty on Mr. Hickey to work or gain employment, the burden is really shifted on her to provide for this child with her needs. And, you know, he had this child when he was about 50 years old. So this child's got four or five more years of school left, and the burden has shifted. The trial court also shifted the burden for her to pick up more of the medical expenses, which we know are $300 a month just in prescription meds alone for the child's ADHD. So the trial court is shifting all of this burden on Ms. Bearhines without really giving much scrutiny to what Mr. Hickey has done with his income and his withdrawals over the past year. So we find it manaculously unjust to look in that regard. Well, the retirement does not necessarily mean that it is a substantial change in circumstances. That's what our argument, that it really hasn't been a substantial change in circumstances. If he's receiving the same amount of income and his spending continues to be the same, and if not better, then why not keep the same child support of $3,043 in place as opposed to coming up with a number of, you know, $1,700. And I think you know that the trial court, excuse me, but in my opinion, the trial court has really substantially erred when opposing counsel writes in their own arguments that they estimate that his income to be $140,000 for 2017. And then the trial court comes up with a number that's less than that, and he comes up with a range of $70,000 to $78,000. You know at that point the trial court has erred if opposing counsel is already acknowledging that, yes, in 2017 Mr. Hickey received at least $140,000 in income. So, I mean, I just look at, you know, when you look at his living expenses from the withdrawal from the IRA loan of being $140,000, his income from his pension, his rental income, his investment income being $78,000, and then him to continue to receive the deferred compensation in 2017, he's at $300,000 a year when the child support itself was based on 2010 income of $271,000 a year. So his income actually went up. And for those reasons I believe that the trial court has erred and you're seeking this court to reverse the decision of the trial court. Counsel? Thank you. Your Honor, is it to please the court? Counsel? At about 5 a.m. this morning I reread Judge Cerny's decision on financial issues in this case and decided I would start my argument off by emphasizing a point in our brief, which is that this court can affirm that decision for any basis supported in the record, regardless of whether the trial judge's reasoning is in accordance with the thinking of this court. Let me ask you this question. Do you concede that deferred compensation is income? Deferred compensation, which are the $83,000 amounts that he was getting in 15, 16, and 17, of course is income. Okay, because did the court find that it was not income? The court essentially disregarded the $83,000 for 15, 16, and 17. Okay. And I will get to that argument. Actually, I'll skip ahead. For 16, it doesn't matter. In 15 and 16, Mr. Hickey paid his full amount as statutory child support. And therefore, the fact that Judge Cerny didn't think about it for 16 doesn't matter. We know that 17 was the last year of the deferred compensation. And in our brief, we did the calculation showing, and it was also done in the post-trial arguments, we did the calculation showing that with the $83,000 added in for 17, his total income projected at $130,000 to $140,000, which is actually an amount commensurate with the guidelines based upon the support that Judge Cerny set. He thought he was deviating substantially above guidelines when he reduced support from $3,043 per month to $1,700 per month. But in fact, for 17, he was almost on the money, which is why I say the court can affirm the decision for any basis found in the record. Judge Cerny's analysis of Mr. Hickey's income, by the way, for 2018 and subsequent years is correct. He estimated it would be between $69,000 and $79,000 per year. And so for the current year, the $1,700 per month is a substantial upward deviation. The trial judge, therefore, took into consideration the fact that this child had lived an opulent lifestyle, which both parents contributed to. I mean, we don't need to have a benefit for either of these people, certainly not Ms. Verhines, whose net worth was also in excess of a million dollars, and with a base salary before considering income of over $135,000 per year. But you're talking about the opulent lifestyle that the child lived, more so when he was with his mom and dad together. He was with his mom and dad together for a year. This was basically a one-year marriage. And subsequent to the divorce, the father, it appears from what I've read, is living quite an opulent lifestyle. And so when you have a child, certainly the primary objective is securing child support for the child, but shouldn't the child also continue to live the lifestyle he would have lived had the parents remained married? The father lived well and shared that with the child. The trial court found that the child had traveled lavishly at the cost of both parents. The mother had monthly child-specific estimated expenses on her financial declaration of $2,000, and the father had monthly child-specific expenses. That's not written aboard, but just child-specific expenses of $1,000. So the judge found that even with the reduction in support, the child was going to continue to be well-supported. Not minimally, not adequately, but well-supported. And in terms of Mr. Hickey's living, the court found that after 40-plus years of employment, when he finally gets terminated because of a change in his company, and no one disputes that that termination was the result of a management change in his company, and he was 62 years old, he gets some accelerated compensation in 2015, and he spends some money in part because he is in the process of getting engaged to and married to another woman after having been divorced for 10 years, in part because he's helping an older child in business, in part because he's traveling with the younger child. The judge found that all of that... Traveled with the younger child to D.C., his home in Bozeman, Montana. Where else? To Florida. To Florida. Isn't that where the older son lived? Where the older child lived, yes. And I believe, I don't know if there were other out-of-state trips with the child. How come there weren't any out-of-country trips? The child did not travel out-of-country with Mr. Hickey. So how extravagant is it, counsel, with all due respect? The trial court found that Mr. Hickey's, when he was unemployed, his deciding to travel was reasonable. More important, though, Your Honor, is the fact that McGrath controls, and using your savings is not child support. There's an interesting... It might say it's using your savings is not child support, but it doesn't say you don't have to give it to support the child. Using your savings is not income. It's not income, but it doesn't say you don't use it to support the child. And the court deviated upward in setting the support at $1,700 per month. The thing that makes this case a little unique, as compared to some, is that for most people, when they have a change in employment status, a negative change in employment status, it does usually result in some degree of hardship. I mean, that's the common case. I sat in the horse court for six years and handled thousands of cases. And that is the thing that you see repeatedly is there is a layoff, there's a riff, there's a whatever, resulting in a termination of employment, and it results in economic reversal. It results in hardship. You don't see that here. Short-term, I agree, you don't see hardship. Well, it doesn't look like it's going to be long-term either. Yeah, but the fact that Mr. Hickey worked hard and accumulated a net worth of a little over $2 million should not be punitively used, and Judge Cerny didn't. How do you view paying to support your child as punitive? Well, he is paying to support his child. He's still paying $1,700 per month plus $300 per month for extracurricular activities, which means that Ms. Verhines is getting, in addition to her healthy six-figure income, an additional $2,000 per month tax-free from the father of the child, and then there's all the spending that he does when the child is with him. Because while it's not on appeal before this court, it doesn't take a very detailed review of the record to look at the fact that these parties had had a fairly contentious post-judgment relationship with regard to spending time with the child. And that was ultimately resolved in this case, but there's no inference that the child is going to continue to prosper and enjoy life when with both parents. Whose burden is it to show that it is not income? Are we talking about the $400,000? Yes. The record would suggest it is not. We think we've met our burden. And as to the $400,000... Is it your burden, did you say, to show that it's... I believe it probably is, in light of the fact that Mr. Hickey misspoke during the trial and agreed that it was an IRA withdrawal, which would seem to put it within the four corners of Lindeman. But, in fact, it wasn't an IRA withdrawal. It was an annuity withdrawal, and the physical exhibits, the financial declarations, and the tax returns indicate that it was post-tax annuity, which he cashed in in its entirety, in part to meet his tax burden from 2015, and in part to buy another house, which the other side objects to, even though that house was purchased as an income-producing rental asset from which he's paying child support. So he knew it wasn't working anymore. He knew he couldn't get a job, but he had money, so he converted some of that money into rental real estate so that he could continue to meet his obligations to his child. Judge Cerny found that it was retirement income. He didn't use the word IRA, but he called it retirement income. That's not the term in Lindeman or McGrath or Marsh. But clearly, in light of McGrath and Marsh, Lindeman ought to be confined to the narrow case of IRA withdrawals, which are pre-tax dollars. But it's not. Lindeman doesn't speak to that. To the extent that this was money which had been earned and saved and taxed, it really, Your Honor, I think falls within the control of McGrath. Well, you bring up a good point. It's your choice as a man or a woman at what age you're going to have children. So if you're close to retirement age and you desire a child, you're going to have to come up with some money to support that child, should he divorce, anyway. So it's going to have to come out of your retirement income so be it. What are we going to say? If you wait later in life to have a child, then your defense is going to be, well, I'm not going to get into my retirement to support my child because it's my retirement income. What do you save retirement for? What do you save retirement to have to live on after you retire? Your client spent more on travel than he did on supporting his child. He spent more on his gifts to his family, his older son, his sister, than he did supporting his child. He spent more on his home and maintaining his home than he did on the support of his child. So how could you say there was a hardship in this case? Your Honor, we didn't argue there was a hardship. We argued that under the law that controls, he's entitled to a support reduction. The trial judge agreed.  There was a change in circumstances. In that his income, as defined by statute and by the courts, had been reduced. But not reduced enough to cause a hardship which would be consistent with it, which is generally the other hand with the change in circumstances. Correct? There is. We did not argue hardship as such. But the fact, the absence of hardship is not, with all respect, a legal basis to deny his petition for modification. And clearly, he didn't ask to be laid off. And the trial judge found that his prospects for re-employment were unlikely and that he had been credible in testifying that he'd made a good faith effort to try to find another job. So he had to play the hand that had been dealt to him. It wasn't a bad hand. He worked hard to accumulate it. Exactly. He did. And we work hard to accumulate wealth so that you can enjoy life thereafter. And if he weren't divorced, his child would be the beneficiary of the life thereafter as a result of his retirement. Why should the child still not benefit from that? The child is still benefiting. The child, obviously, the beneficiary of that lifestyle with the father when he's with him, which is for more time now than it's ever been. He's still getting his child support. He's still getting the father's contribution to extracurricular expenses. Your Honor, this is not a voluntary quit of a job. It's not a deadbeat dad. It's not a guy that's ever missed a support payment. He ought to get some credit for having done everything he's been asked to do in the past. That credit being less in child support? That credit being that the court recognized his circumstances had changed through no fault of his own. And I believe that Judge Cerny did not abuse his discretion, which is the standard here, in concluding that he should not be required to draw down his savings in order to continue to pay child support at the amount previously set. So maybe that's the way that you're phrasing it. Maybe when he drew down his savings to take out the money, his net worth didn't go down because of income or because of interest on his salary or his base income, his savings account. So he wasn't drawing down. He was drawing down, but he still was at the same amount or more based upon the market, correct? It was close. It was close. Yes, I agree. He made like $186,000. Now, let me ask you this, though. I think there was something that Judge Cerny, I think, stated incorrectly. I'm sorry. Judge Cerny, it appeared to me, made a lot of assumptions like, oh, he's never going to go on this many vacations again. I'm not sure where he got that information or how he could infer that that's never going to happen again, that he's not going to spend $60,000 a year again on a vacation. Oh, I know what it was. I think it was you in your brief said something to the effect of if he's going to have to draw down or Judge Cerny said if he draws down by the time he's this age, there's only going to be this amount of money. How much longer would he have to draw down to support this child? Judge, nobody did that calculation. Oh, but yes, you did. Well, Judge Cerny projected out basically for some odd, some long-term period. Exactly. 20 years. 20 years. But how long is he going to support this child? The child is 14 years old. Four years? Yeah. I think what the judge said was if he continues to live and spend at the level he's been spending, he's broke after 20 years and leaves nothing to his children and heirs. I don't agree with that. But I agree with Your Honor from counsel's argument. The case is not a movie. It's a snapshot. I'm sorry. The case is not a movie. It is a snapshot in time in terms of the circumstances as they existed. I see that I'm out of time, so if there are no other questions, I appreciate the court's questions and we would respectfully ask that the trial judge's opinion be affirmed because it is supported in the record. Thank you. Thank you. Do you wish to reply? Thank you, Justices. I just want to address a couple points that Mr. Muir brought up in his argument. And one of the things he addressed strenuously was the lavish lifestyle of this child, with each parent designating about $3,000 a month combined spent, stripping of the child, excluding housing and food and those kinds of things. And that number was taken from the financial affidavits. And I realize you may not have the financial affidavits of the parties in front of you, but I do want to point out a couple specific things. In Ms. Verheid's financial affidavit, just for the record, it's on Supplemental Record E13, she lists the child's medical expenses, including doctor's counseling, as being $605 a month. On Mr. Verheid's financial affidavit, which is Mr. Hickey's financial affidavit, which is Supplemental E, page 24, he lists the child's medical expenses at $450 a month. So if you're looking at a combined $3,065 a month for expenses for this child, and now you add up the $450 and the $605, that's $1,000. So the judge also shifted this burden onto Ms. Verheid by modifying the obligation for ordinary and extraordinary expenses, because in the judgment it was 50-50. And pursuant to his order, he then shifted all the ordinary to Ms. Verheid and then divided up the extraordinary. So the burden is also shifted in that regard. I did also want to bring up the point that the justice brought up and that there were no international travels for the minor child with Mr. Hickey during this period of time. Mr. Hickey's international travel to Spain, Argentina, Australia, et cetera, was either done individually or was done with his fiancée, according to the Exhibit 9 that was admitted into evidence. And then I know that justice did latch onto one of the assumptions of Judge Cerny, which I also take issue with, and it's on page C-1194 of the record. And this is where he assumes that if Mr. Hickey makes $78,000 a month, he would have to withdraw $193,000 a year to come up to the $271,000 that the child support from 2010 was based on. And then Judge Cerny goes on to say if he lives another 20 years until age 84, it would require a sum of the assets that Mr. Hickey no longer has, which I think the justice correctly pointed out the faulty logic in this argument. When the child is graduating in four years and then hopefully going on to college, this would not deplete Mr. Hickey's assets in any way, shape, or form. And there is no provision for college expenses. There is not, to my knowledge. This does not end either graduation from high school or the age of 19, whichever comes first? Correct. And then Ms. Berheim or Mr. Hickey has the right to petition for college after that point. But because, as counsel correctly pointed out, at the time of the dissolution, the child was so young, those issues are generally reserved. And because the child is not yet college ready, there's been no requirement in that regard. But just in summation, because of the income received by Mr. Hickey, there is no substantial change in circumstances. And the child support order that was in place in 2010 should continue to stand. And I think that given the facts in this case, I hope that the justices reverse the decision of the trial court based on the numerous assumptions that we pointed out that just seem to lack, they're flawed. Put it that way. Thank you. You're asking for reversal and remanding back for? Yeah, unless the justices believe that they can just reverse and then let the child support order from 2010 stand, that would be satisfactory. Thank you both for your arguments. They've been exceptionally well presented this morning. We will be in recess until the next case at 10.30.